UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

CLEAN EARTH REMEDIATION AND
CONSTRUCTION SERVICES, INC.,
*formerly known as* BARBELLA
TECHNOLOGY, INC,

       Plaintiff,

  -v-                                     No.  05 Civ. 3651 (LTS)(HBP)

AMERICAN INTERNATIONAL
GROUP, INC., AIG ENVIRONMENTAL,
and NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,

       Defendants.
-------------------------------------------------------

AMERICAN INTERNATIONAL
GROUP, INC., AIG ENVIRONMENTAL,
and NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,

       Third-Party Plaintiffs,

  -v-

CLEAN EARTH, INC.,

       Third-Party Defendant.
-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

Plaintiff Clean Earth Remediation and Construction Services, Inc. ("Plaintiff" or "CERCS"), a New Jersey corporation that is the successor to Barbella Environmental Technology, Inc. ("Barbella"), initiated this action against National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), a Pennsylvania corporation, as a result of a contractual agreement between

the parties gone awry. Additionally named in Plaintiff's complaint are Defendants American International Group, Inc. ("AIG"), a Delaware corporation, and "AIG Environmental," which the available evidence indicates is a non-entity (collectively, "Defendants"). Various claims, counterclaims, and a third-party claim against Clean Earth, Inc. ("Third-party Defendant" or "CEI"), a Pennsylvania Corporation, have been asserted. Plaintiff's and Defendants' cross-motions for summary judgment are now before the Court. The Court has subject matter jurisdiction of the claims between Plaintiff and Defendants because there exists complete diversity of citizenship among them. 28 U.S.C. § 1332. The Court exercises its supplemental jurisdiction authority of the third-party claim asserted by Defendants. 28 U.S.C. § 1367.

## BACKGROUND

The parties agree that there are no material facts in dispute and that the resolution of the cross-motions depends entirely on the Court's construction of the relevant contracts. (Defs.' 56.1 Stmt. p. 5.) Accordingly, the Court will merely provide a summary of the undisputed facts and the operative contractual provisions.

In early 2001, Barbella bid on a contract with the City of New York for the restoration of the Pennsylvania Avenue landfill in Brooklyn, New York ("Brooklyn Contract"). At the time, Barbella was a wholly-owned subsidiary of U.S. Plastic Lumber Corp. ("USPL"), but USPL was already in negotiations to sell Barbella.[1] The Brooklyn Contract's bid specifications required Barbella to provide a performance bond and a labor and material payment bond, each in the amount of the contract price (the "Brooklyn Bonds"). Barbella, in order to induce National Union to furnish the Brooklyn Bonds, executed a "Pledge Agreement" with USPL and various indemnitors (referred to by Defendants in their motion papers as the "Side Agreement") providing that a mutually agreed

---

[1] As discussed *infra,* USPL sold Barbella to CEI, CERCS' parent company, in 2002.

upon Funds Administration Company would be engaged for the duration of the Brooklyn Contract to receive and disburse contract funds.  The Pledge Agreement provided that two million dollars, funded by initial progress payments made by the City of New York to Barbella, would be deposited with the Funds Administration Company as cash collateral security to be held in escrow (the "$2,000,000 Escrow Fund").  The escrow funds would be made available to National Union in the event claims were made against either of the Brooklyn Bonds.

Barbella was awarded the Brooklyn Contract and entered into an agreement with the City of New York in an initial contract amount of approximately $57,000,000.  Barbella and National Union selected Polar Capital LLC ("Polar") to be the Funds Administration Company.  On January 2, 2002, Barbella and Polar executed the "Administration Agreement" (referred to by Defendants in their motion papers as the "Funds Control Agreement") whereby Polar was required to escrow 20% of each payment due to Barbella under the Brooklyn Contract up to a maximum of $2,000,000.  The Administration Agreement contains the following exculpatory clause: "[t]he Surety [National Union] shall have no liability to Contractor [Barbella] for any act or omission, negligent or otherwise, of Disbursing Agent [Polar]."  (Staples Aff., Ex. 2 ¶ 10.)

With the Administration Agreement and Pledge Agreement in place, National Union, as surety, executed the Brooklyn Bonds in favor of the City of New York.  While the Brooklyn Contract remained in force, USPL sold Barbella and other entities "to an entity that eventually became known as Clean Earth, Inc., which is the parent company of Plaintiff [CERCS]."  (Staples Aff. ¶ 17.)  The parties accordingly entered into various agreements, including a Substitution Agreement, by which CEI recognized and agreed to be bound by the various agreements related to the Brooklyn Contract entered into by Barbella and USPL.  CEI also executed a new General

Indemnity Agreement ("GIA") in favor of National Union.[2]  The GIA provides as follows:

> The Contractors [CEI] and Indemnitors [CEI] shall exonerate, indemnify and keep indemnified the Surety [National Union] from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) by reason of having executed or produced the execution of the [Brooklyn] Bonds, (2) by reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this agreement or (3) in enforcing any of the covenants and conditions of this agreement . . .

(Staples Aff., Ex. 5 ¶ 2.)  Both the Substitution Agreement and the Letter Agreement contain New York choice of law provisions.[3]  (Staples Aff., Exs. 4, 6.)

On October 1, 2002, National Union and CERCS issued a joint directive to Polar to transfer the $2,000,000 Escrow Fund to National Union so that National Union, rather than Polar, would hold the funds in escrow.  Polar failed to make the transfer despite repeated requests.  CERCS eventually sued Polar in New Jersey Superior Court and obtained a judgment against Polar, upon which CERCS has allegedly been able to collect less than $2,000,000.

CERCS now seeks to recover the balance of the $2,000,000 Escrow Fund from National Union.  To that end, CERCS asserts claims for breach of contract and breach of the duties of good faith and reasonable care, seeking actual and compensatory damages.  National Union asserts a counterclaim against CERCS and a third-party claim against CEI, both seeking indemnification with respect to the claims asserted against National Union.  For the following reasons, Defendants' motion for summary judgment is granted and Plaintiff's cross-motion for summary judgment is denied.  Defendants' counterclaims and third-party claims are rendered moot.

---

[2]   That same day, CERCS and National Union executed a Letter Agreement to amend the GIA.

[3]   The parties do not dispute that New York law governs all of the relevant agreements.

D<small>ISCUSSION</small>

Summary judgment should be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing the absence of any genuine issue of material fact. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986). For the purposes of summary judgment, a fact is material "if it 'might affect the outcome of the suit under the governing law.'" <u>Holtz v. Rockefeller & Co.</u>, 258 F. 3d 62, 69 (2d Cir. 2001) (quoting <u>Anderson</u>, 477 U.S. at 248). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Id.</u> The facts will be viewed in the light most favorable to the party opposing the motion, and all reasonable inferences shall be drawn on the nonmovant's behalf. <u>American Cas. Co. v. Nordic Leasing, Inc.</u>, 42 F.3d 725, 728 (2d Cir. 1994). However, the "party against whom summary judgment is sought . . . 'must do more than simply show that there is some metaphysical doubt as to material facts . . . The nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" <u>Caldarola v. Calabrese</u>, 298 F.3d 156, 160 (2d Cir. 2002) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp</u>., 475 U.S. 574, 586-87 (1986)).

Defendants proffer, through the affidavit of Robert Staples, Vice President of National Union, that AIG Environmental is not a legal entity but rather a trade name used by National Union and others. (Staples Aff. ¶ 2.) Plaintiff has not proffered any evidence in rebuttal to frame a genuine issue of material fact as to whether AIG Environmental is a proper entity. As "[n]o action may be brought by, nor may any suit be maintained against, a trade name as an entity," <u>Little Shoppe around the Corner v. Carl</u>, 363 N.Y.S.2d 784, 787 (N.Y. Co. Ct. 1975), Defendants' motion for summary

judgment is granted with respect to Plaintiff's claims against AIG Environmental.

Defendants also proffer, through the affidavits of Staples and Steven Dixon, Deputy General counsel of AIG, Inc., that AIG had no relationship with Plaintiff that would render it a proper party to this litigation. (Staples Aff. ¶ 31, Dixon Aff. ¶ 3.) AIG is not a signatory to any of the relevant agreements, and Plaintiffs have proffered no rebuttal evidence establishing grounds upon which AIG can be held liable for the claims asserted against National Union. Accordingly, Defendants' motion for summary judgment is granted with respect to Plaintiff's claims against AIG. See W.H. Brownyard Corp. v. AIG Inc., 655 N.Y.S.2d 1021, 1022 (2d. Dep't 1997) (affirming lower court's dismissal of plaintiff's claims against AIG on grounds that AIG could not be held liable on a contract entered into by plaintiff and National Union).

The crux of CERCS' complaint is that National Union should be held responsible for the actions of Polar, which absconded with the $2,000,000 Escrow Fund. Plaintiff's argument is precluded by the fact that the parties agreed in writing to designate Polar as the Funds Administration Company and deliberately assigned to Plaintiff the risk of any failure or malfeasance on the part of Polar. Section 10 of the Administration Agreement provides: "[t]he Surety [National Union] shall have no liability to Contractor [Barbarella/CERCS] for any act or omission, negligent *or otherwise*, of Disbursing Agent [Polar]" (emphasis added). The Administration Agreement thus expressly released National Union from any liability arising from Polar's acts and omissions. The provision is sufficiently broad to encompass Polar's defalcation with respect to the $2,000,000 Escrow Fund. As the Administration Agreement must be enforced according to its terms, Vermont Teddy Bear Co. v. 538 Madison Realty Co., 1 N.Y.3d 470, 475 (N.Y. 2004), the Court concludes that National Union cannot be held liable for the loss created by Polar.

Plaintiff asserts that the exculpatory provision of Section 10 of the Administration

Agreement is unenforceable under Section 1-102 of the New York Uniform Commercial Code ("N.Y. U.C.C."), which provides in pertinent part: "The effect of provisions of this Act may be varied by agreement . . . except that the obligations of good faith, diligence, reasonableness and care prescribed by this Act may not be disclaimed . . ." N.Y. U.C.C. §1-102(3). The parties' decision to relieve National Union of liability for any wrongdoing by Polar does not constitute a disclaimer of any of the enumerated obligations and, accordingly, even if the Court were to conclude that the N.Y. U.C.C. is applicable here, see n.4, *infra*, the statute would not render unenforceable the exculpatory provision of Section 10 of the Administration Agreement.

The Court's conclusion that National Union is not obligated to make good the loss created by Polar finds further support in the entitlement rule of the New York common law of escrow, which provides that "if property is embezzled or lost by an escrow holder, the loss . . . falls on the one who owned the property at the time." Asher v. Herman, 49 Misc. 2d 475, 478 (Sup. Ct. 1966). It is undisputed that, under the terms of the GIA as amended by the Letter Agreement, the $2,000,000 Escrow Fund was the property of CERCS at the time it disappeared, as none of the enumerated conditions upon which it would have been assigned to National Union had occurred. (Staples Aff., Ex. 5 ¶ 3; Ex. 6.)

Plaintiff, in its motion papers, asserts that the $2,000,000 Escrow Fund should be considered a grant of a security interest in cash collateral within the ambit of Section 9 of the N.Y. U.C.C., rather than as an escrow arrangement governed by New York common law. The purported advantage to Plaintiff's legal position of such a characterization is that the N.Y. U.C.C. would impose upon National Union a duty of reasonable care in the custody and preservation of collateral. N.Y. U.C.C. § 9-207(a). Even if the Court were to conclude that Section 9 of the N.Y. U.C.C. is

applicable here,[4] Plaintiff's effort to assign responsibility to National Union would fail because Plaintiff has not proffered any evidence to create a genuine issue of material fact as to whether National Union failed to exercise reasonable care in the custody and preservation of the $2,000,000 Escrow Fund.

A plaintiff must proffer specific evidence that a defendant breached its duty of reasonable care to sustain a claim under N.Y. U.C.C. § 207. Bud-Lee Ski Centers v. New York, 116 A.D.2d 715, 716 (2d Dep't 1986) ("The mere fact that the property was stolen while in possession of the State does not establish the State's liability to claimant. A secured party or lienor is liable for damages arising out of the theft of collateral in its possession only if the theft was occasioned by the failure of the secured party or lienor to exercise reasonable care in the custody and preservation of the collateral."). CERCS essentially relies on a *res ipsa loquitur* argument: Polar absconded with the funds, therefore National Union must have failed to exercise reasonable care. Mere conclusory assertions unsupported by specific facts are insufficient to enable a nonmoving party to survive summary judgment. See Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002).

CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted, Plaintiff's cross-motion for summary judgment is denied and Defendants' counterclaims and third-

---

[4] The Court need not and, accordingly, does not resolve whether Section 9 of the N.Y. U.C.C. governs the parties' transaction. The Court notes, however, considerable legal authority suggesting that it does not. Gen. Ins. Co. v. Mezzacappa Bros., Inc., 110 Fed. App'x 183 (2d Cir. 2004) ("Under New York law a surety's rights in the property of its insured are secured by virtue of equitable subrogation, rather than by virtue of a security interest within the meaning of Article 9 of the Uniform Commercial Code"); see also 4 James J. White & Robert S. Summers, Uniform Commercial Code § 30-6 (5th ed. 2002) ("[i]n construction contracts, sureties underwrite the performance and payment bonds the contractor must post . . . the issue of Article 9 coverage was fought out at the drafting stage, and the sureties prevailed in their efforts to remain outside the Article.").

party claims are rendered moot and accordingly dismissed. This Order resolves docket entry nos. 34, 47 and 49. The Order issued by Magistrate Judge Henry B. Pitman (docket entry no. 59) previously resolved docket entry no. 28.

The Clerk of Court is respectfully requested to enter judgment dismissing the complaint and close this case.

SO ORDERED.

Dated: New York, New York
May 15, 2009

LAURA TAYLOR SWAIN
United States District Judge